Mr. Tilner? Yes, good morning. I'm Mitch Tilner for the Appellant Cowden Automotive Long-Term Disability Plan. In this case, the district court made two fundamental errors. First, it refused to honor the bargain struck by the contracting parties that Rhode Island law would govern their relationship. And secondly, the court misapplied California law to invalidate the discretionary clause. That second issue is the same issue that you've heard about this morning in the Beta case. In our case, you don't need to reach that issue if you agree that Rhode Island law should have been applied in this case. So I'll begin with the choice of law issue. Now, this circuit has held that when a choice of law is made in an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair. That's the Wang case. In fact, the court there explained why choice of law clauses are beneficial to the plan and not unfair to the beneficiary. Now, the policy here said this policy is delivered in Rhode Island and is governed by its laws. There's also evidence in the record the policy was issued in Rhode Island to a Rhode Island trust. Under Wang, this court should honor this provision unless it's unreasonable or unfair. Now, to determine whether it's unreasonable or unfair, the court should look at the circumstances existing when the contract was formed. This contract was formed in 1986 in Rhode Island. It was issued to a Rhode Island trust. At that time, Cowden Automotive was not participating in the plan. They were not on the scene. Cowden became a participant ten years later in April 1996. Now, no one compelled Cowden to join the group. Cowden chose to provide this benefit to its employees under the terms and conditions already existing in the contract. The trial court, nevertheless, found that the choice of law provision is unenforceable because it denied a California employee the benefit of California law. How do you answer the argument made on the other side? At the time the policy was issued, as you said, in Rhode Island to a Rhode Island trust, it was envisaged that this trust would sell an interest in that trust, and it was foreseeable that such interest would be in California. And that, therefore, someone would have an interest in that trust who was not from Rhode Island, and they would be buying into that trust, and they would not be from Rhode Island. Therefore, the beneficiaries of the trust would be in a foreign jurisdiction. Well, there's no evidence about what they anticipated at the time. It had to be. I mean, it's common sense. Right. They weren't issuing this just for Rhode Island people. Exactly. The problem with that argument is that if they anticipated California participants, then they must have anticipated Arizona participants, Texas participants, New Mexico participants, 49 other states could have participated in this trust. The whole point of the choice of law clause is to prevent the laws of 49 states from coming into play, depending on where a claim came from. A plan that has to deal with the laws of 49 states is going to be a more expensive plan. It's going to be a more litigious plan. The very purpose of the choice of law clause was to prevent that problem, as this court explained in Wang. Now, the trial court's refusal to enforce the choice of law clause on the ground that it denied plaintiff the benefit of California law, of course, the same rationale would justify disregarding the choice of law clause in every jurisdiction. Also, that's contrary to Wang, because in Wang, this court upheld a choice of law provision which denied a California claimant the benefit of California statute of limitations. So the district court should have applied an abusive discretion standard. That's your argument? That is correct, because that is what Rhode Island law permits, and the contract here contained a very clear discretionary clause. Choice of law, not choice of forum clause, if enforceable. That's correct. It's a choice of law clause. It would involve California Federal Court in Cal City and California applying Rhode Island law. That is correct. The claimant was not obliged to fly across the country to appear in Rhode Island. It was a choice of law, not a choice of forum clause. Now, on if we were to agree and remand, would Abati apply? Well, first let me try to explain why you don't need to read that. Well, first tell me yes or no. Would Abati apply? I'm rather fond of yes or no answers. It would not apply in this case, because there was no claim of conflict of interest in the district court. Abati comes into play if the claimant contends that heightened skepticism should be applied because there's a conflict of interest of some sort. There was no such claim in this case. So that's why I'm suggesting this Court itself. Did we ever get to the district court ever get to that? Well, the district court first entertained a summary adjudication motion on standard of review. Now, in the context of that briefing, had there been a theory or a claim of conflict, one would think, because standard of review had not yet been set, one would think the claimant would have asserted the point and argued even if you apply abusive discretion, Your Honor, you ought to view it skeptically. Or, in fact, I believe at that point the law supported de novo review if there were a conflict of interest. So, again, the claimant's interest would have been in arguing we've got a conflict here, apply de novo review. There was no such argument. The claimant's sole argument was the California Insurance Commissioner doesn't like discretionary clauses, so you ought not to enforce it, Your Honor. And that's the argument the district court accepted. Okay. Other than the argument that they could have made this argument before, why wouldn't the district court, if we were to remand, apply Abate? Other than the argument that the issue has been waived. Abate sets the parameters for use of the abusive discretion standard, right? Where there's a claimed conflict of some sort, yes, Your Honor. I believe the issue has been waived in this case. If this Court disagrees, then I suppose Abate would inform the abusive discretion analysis if the claimant asserts. I think that's actually what I was asking. Would – that's a good way of putting it. Would Abate inform the application of the abusive discretion standard? I think – I believe the issue has been waived, but if it's not waived, yes, I think that's correct. Okay. All right. So in the end, the plaintiff's argument boils down to the claim that the choice of law clause is unenforceable and fundamentally unfair because under Rhode Island law, the Court would review the claim decision under an abusive discretion standard, which is less favorable to the plaintiff in this case. Of course, both this Court and the U.S. Supreme Court have said discretionary clauses are perfectly appropriate in ERISA contracts. So they can't be unreasonable or fundamentally unfair. They've been approved by both this Court and the U.S. Supreme Court. And that standard applies, whereas here the contracting parties reached that agreement and vested discretion in the claims review fiduciary. This Court should, and the district court should have, respected the bargain the party struck. As this Court said in Wang, the benefits of enforcing the contractual choice of law redound ultimately to the beneficiaries and to the soundness and stability of plans, which is an explicit objective of ERISA. Now, turning to the... The policy does contain a provision that says any section of this policy which on its effective date conflicts with the laws of the State in which this policy is issued is amended by this provision. This policy is amended to meet the minimum requires of those laws. Yes, Your Honor. The policy was issued in Rhode Island, so that provision means that if the policy is in conflict with Rhode Island law, it is deemed amended to conform to Rhode Island law. That's correct. Turning to the discretionary clause issue, if the Court is interested in hearing more on that, you've heard about it in the Beda case earlier. I mean, if your client is correct, Judge Yeltsin applied an incorrect standard of review. That is correct. And if we were to agree, the appropriate next step is remand. I suggest, Your Honor, that the appropriate next step is reversal with direction to enter judgment for the plan. Why would we do that? Because this Court can determine on this record that there was no abuse of discretion by the company. There's nothing else to be adjudicated in the trial court. The record is set. The record is set. The law tells us what constitutes an abuse of discretion, failing to follow the law, ignoring the plain language of the policy, arbitrarily failing to credit evidence presented by the claimant. Those are the factors that can support an abuse of discretion finding. None of those are present here. In fact, the district court said neither side is entitled to summary judgment here. It could go either way on the issue of when he became disabled. Yeah, but it's a new ballgame. If we agree with you that the district court applied the wrong standard, it's a new day for both of you to go back and apply the right standard as far as, you know, we don't adjudicate factual things here. I understand. I understand. I don't believe any factual findings are required. Well, then you would argue to the district court there's no factual, but I don't know what your adversary is going to say. I understand. Well, I'm making a pitch for reversal with directions. I believe this Court can do so on this record. There's no the record is set. The district court said this is a close call, could go either way. Well, in that case, how could there be an abuse of discretion? Well, if the appellee says that there are no facts that would be tendered on an abuse of discretion standard to show that you abused your discretion, then I would agree with you. But unless that concession were made, how do we know what facts would be tendered on an abuse of discretion disposition? I believe the record on its face reveals all the facts that this Court or the district court would need to answer the question. I think we've got your position nailed down. You've teed it up very well. Thank you very much. We've got some time left for a rebuttal if you choose to use it. Very good. Let's hear from the other side. Ms. Reniker, I'm glad we asked you to stay. I didn't realize you had both cases. Please step up. I wasn't going anywhere. Okay. I take it you declined to make that concession. That there are no additional facts that would be presented or considered on abuse of discretion review, yes, I do. There are a number of facts that the district court didn't find it necessary to consider because of her decision that the standard of review was de novo. For example, she didn't consider the effect of the determination by both the social security administration and the State of California's Employment Development Department that Mr. Fenberg became disabled on February 22nd. She didn't reach that because she determined that even if he didn't become disabled until March 1st, he was still entitled to benefits under de novo review. How do we deal with Wang? Reading this decision was like taking a step back in the history of technology, computers 1.1 or something. But Wang seems to say that we should respect choice of law contractual decisions. How do we steer clear around or over that? Well, first of all, in the same way that Judge Ilston did, by saying that in this, in Wang, the employer had selected for its plan, and this is not an insured plan in Wang. This was a choice that was made by the employer in preparing its benefits plan, that it would select as the state whose law should govern the state where the employer was located and most of its employees were located, which was Massachusetts. That's not true here. In this case, the employer is located in California, and all of the seven participating employees in the plan are located in California. Your client is a beneficiary of this contract, right? Well, my client is a participant in an ERISA plan that was established by his employer, Cowden Automotive. Isn't the contractual analysis the decision of Cowden Automotive to participate in this particular plan? That's the A and B of the contract, isn't it? No, for a couple of reasons. First of all, the trust that is asserted to exist in this case, and we don't know very much about this trust, because although there is a trust agreement that's referenced in the insurance policy, the trust agreement was never put into the record. But this trust is not an ERISA plan. The trust, and that's clear, that's the Eleventh Circuit's analysis in the Donovan v. Dillingham case. Because this trust is not established by an employer for the benefit of its employees, it is not an ERISA plan. So we know that the trust is not an ERISA plan, and I think that calls into question whether the contract that was entered into between Reliance, the insurer, and the RSL Group Benefits Trust, the trust that was established presumably by the insurer, is actually an ERISA contract, which is the term that's used in Wang. I also want to point out a factual question that's raised by the record that Judge Ilston didn't find it necessary to reach, and that is the question whether that master policy is actually the governing contract here. Now, the master policy begins on page 421 of the administrative record, of the second volume of the excerpts. And that policy is policy number 97200, and it states that the policyholder is the trust. Now, following that directly in the administrative record, starting at page 442, is a statement of the contract provisions that apply specifically to Cowden Automotive. And that document says that the policy number is 433, and the policyholder is Cowden Automotive. And in every piece of correspondence with Mr. Fenberg and with Cowden Automotive itself, the policy number that is referenced is not 97200, it's 433. Yeah, but among carriers, I mean, it's well established that you're a participant, you're not the policyholder. You're a participant in a policy that was issued. And that might be a misnomer, but this ought to be the employer is not the policyholder. They are participants in insurance nomenclature and not policyholders. The document at 2ER444 states that Cowden Automotive is the policyholder. Yeah. And as a matter of the way it works, the money is paid by the trust, in effect, by the insurance policy, which was originally lodged in Rhode Island, and not by anyone else. Well, there's the policy states, there's one page in the record that states that policy number 97200 was delivered in Rhode Island. The documents at 2ER442 and subsequent pages say that the policyholder is Cowden Automotive, the policy number is 433, Cowden Automotive is located in California. That's totally correct. But let me ask you, if we were to follow your argument to its total conclusion, how do you answer the appellant's argument, then there would be a 50-state decision here as to how each participant would be handled concerning benefits, and that the carrier, at the time they issued the policy to the trust, actuarially made the premium with the thought that it would be on an abuse of discretion standard if they thought they were going to go into a 50-state analysis on benefits, and that each one of the participants is a policyholder, and ergo a separate state's law would apply, that they never would have written the policy for the premium which they envisaged when they thought, well, we're going to write this policy and actuarially figure out what our risks are under Rhode Island law. How do you answer that argument? Well, I hear three arguments, one that if it is correct that a forum choice is unreasonable where it selects a forum that has no relationship to the employer, the ERISA plan, or the employees, then the forum choice is unreasonable, and the correct choice of law is the situs of the employer and the plan and the employees. Then, yes, there is the potential that if every employer is like Cowden Automotive, located in a single state other than Rhode Island, that every employer's policy would have separate state standards. That's exactly what the Supreme Court contemplated in Metropolitan Life Insurance Company v. Massachusetts when it said that the congressional decision to preserve state insurance law with respect to ERISA plans inevitably results in disuniformity because of the application of individual states' laws. Could you repeat those ER sites for the two different policies? Yes. It's 2ER-421. That is where the master policy begins. And at 2ER-442, the provisions specific to Cowden Automotive begin, and the page that refers to Cowden Automotive as the policyholder is 444. And then the correspondence that I referred to that refers to the Cowden Automotive policy number is throughout the record. That would be the claim denial letters and so forth. Okay. There was an issue raised regarding the benefits of a choice of law provision that it, and what the Wang court said was it quoted the Supreme Court's Carnival Cruises argument, Carnival Cruises' decision, and said that the benefit is that it dispels any, that a choice of law provision dispels any doubts as to the proper form for a case. Well, this suit could not have been brought in Rhode Island because ERISA's venue provision states that venue is proper in the state where the plan is administered. And this plan was not administered in Rhode Island. It was administered by Cowden in California and by Reliance in Pennsylvania. There's no argument, I hear from the other side, about forum or venue. It's choice of law. That's true. Well, to the extent that the value of the choice of law provision is in dispelling questions as to forum, that doesn't apply here. Well, the one value that occurs to me is that a company sets up a plan of this type or a policy of this type, chooses an applicable law for the reasons Judge Cowden indicated, that can plan actuarially on how they're going to deal with it, and then they make that available to folks across the country. And the benefit to a small employer is they can participate in a pool with a lot of other people and perhaps gain rates and coverage that they might not be able to get. That's the benefit that occurs to me. What's wrong with that? Well, for one thing, it's hard to believe that there aren't enough small employers in California to aggregate their risk. Well, that's right. Cowden Automotive made that choice. They presumably surveyed what was available. They made that choice, and they made the plan available to their employees, right? That's correct, but it's not clear that they made the choice of Rhode Island law. The trust made the choice of Rhode Island law, but Cowden Automotive, the documents pertaining to Cowden Automotive make clear that it purchased the insurance from a broker here in California, whose commission was paid here in California. Cowden paid the premiums in California, and Cowden would have no reason to select Rhode Island law. Except they knew they were participating in a trust that was issued in Rhode Island and subject to Rhode Island law. Well, that's not clear. There's a document that states that. Why is that clear? Well, there is a document that states that Cowden is agreeing to participate in the trust. It has a signature line for Cowden, but no signature. And I think that's a fact question that wasn't developed in the district court, because, again, the district court found that it was inherently unreasonable to have this choice of law provision. The ER site for the? The blank signature. Yes. That is 423. They nonetheless participated in the plan, paid premiums to the plan, did all that they were supposed to do, as if signed. Did they not? Yes. As far as we know. Even though it's not signed, all parties participated in it, as it was said, and as if it were signed. It's a ratification of whatever agreement that wasn't signed. You don't deny that, do you? You know, I think that there hasn't been ‑‑ I have not done the ratification analysis, Your Honor. I think that the ‑‑ as far as we know, the employer did pay the premiums, as stated in the documents that start at 2ER442, here in California. It was billed in California. Well, I mean, as soon as ‑‑ I've just read the briefs, and I, of course, scanned the record, but I'm not aware that any allegation was made that because it wasn't signed, you're not bound or anything like that, because they participated in this fully, and they made claims on it, and they never made any claim that they were not, for return of premiums or anything like that. No. You know, the employer is not a party here. I'd like to move on, if I may, unless there are more questions about choice of law, to the question of the applicability of abating here. Abating applies because there is a structural conflict of interest. It doesn't matter whether the issue under Atwood of whether the conflict tainted the decision making was raised below. That's a nonissue. The only issue under abating is that there is a structural conflict of interest, and abating says that where a structural conflict of interest exists, that conflict must be weighed in applying the abuse of discretion standard. That didn't happen here, of course, because the district court never got to the question of conflict and could not have gotten to the question of conflict as analyzed under abating, since abating hadn't been decided yet. But all that does is say remand, reverse and remand, and apply an abuse of discretion standard, doesn't it? Yes. Yes. And under abating, there are numerous facts that would lead the court to apply a heightened level of skepticism. For example, as the district court pointed out, Reliance made no effort to resolve the discrepancies in the record regarding when Mr. Fenberg terminated his employment. Mr. Fenberg says it was February 22nd. The Social Security Administration says it was February 22nd. The Employment Development Department says it was February 22nd. The employer says it was March 1st. So Reliance made no effort to investigate these discrepancies and to try to resolve them before making a determination on Mr. Fenberg's claim. The argument simply picked the date that it believed was most favorable to it and decided the claim on that basis. I'd like to make two points on the issue if California law does apply, would de novo review be appropriate here? And I make these points only because this case is different from Beda in two respects. One respect in which it's different from Beda is that the policy in this case was never approved by the California Insurance Commissioner. So the issue of whether the notice to withdraw approval operates prospectively only is not an issue here. There never was an approval by the California Insurance Commissioner in this case. The second point is the conformity with State laws provision that Your Honor pointed out earlier. Exactly. That if California law applies, then the policy is deemed to comply with California law, which the insurance commissioner has said requires that the discretionary clause not be enforced. So those factors distinguish this case from Beda on that analysis. Okay. Thank you for your argument. Thanks for both of your arguments. Appreciate you coming in today. Revato. Thank you. First on the question whether the master policy here is truly the governing contract, that's a completely new issue. This morning is the first time I've heard about that. If there's any doubt about which contract applies here, we'd be happy to brief it. Otherwise, I think it's been waived. That's never been argued. The policyholder is the trust, not Cowden Automotive. I'm looking at excerpts, page 212, which is the face page of the policy. It says policyholder, the RSL Group and Blanket Insurance Trust. So I don't believe. And the date is August 1986, 10 years before Cowden joined the group. How come participants receive policy, whatever she said, they're denominated as insurance policies or whatever? I believe the participants receive certificates memorializing or summarizing the plan. Well, that's what I would think. They get certificates of participation. But she said that they have a policy number that they were given. Well, there's a policy number on the policy. It's a different policy number than the trust has, she said. I mean, I don't know. I just ‑‑ I'm not sure, Your Honor. All right. I'm not sure. But there's no doubt about which contract applies. There's no doubt it was a Rhode Island policyholder issued 10 years before Cowden joined the plan. Counsel briefly mentioned that the forum choice here, the forum choice of Rhode Island was unreasonable. I respectfully disagree. It was completely reasonable because that's where the policyholder was located. It's not a forum choice. It's a law choice, right? Yes. I'm sorry. The choice of law, correct, was totally reasonable. Also, counsel raised the question whether Cowden signed up with the plan, because there's no signature on the page in the record. Of course, if Cowden never joined the plan, the case is easy. There would be no claim, no possibility of benefits. If Cowden is not a participant, then the claim was rightly denied. So I think we've all proceeded with this case and with the appeal on the assumption that Cowden is a participant. There's never been any dispute about that. Finally, I guess the point that was made there is it's, at least from your opponent's point of view, it's unclear which policy they were participating in. I think that was the argument. Again, that has never been brought up before this morning. Okay. So I don't believe it's in the case. Finally, on the Commissioner's opinion, if the Court is interested in further discussion about that, I have a lot to say. The Court may have had its fill of that this morning. But briefly, the Commissioner's opinion that the discretionary clause renders the policy illusory is simply unsound. If that were true, if, you know, if the discretionary clause were totally, gave unfettered discretion to the company as the Commissioner believes, then we'd never see a decision overturned for abuse of discretion. I think you can just incorporate by reference Ms. Shea's arguments in the first case. I will do so. Thank you, Your Honor. Thank you both for your arguments. Appreciate it. This is another very interesting case. It's submitted for decision. The Court will stand in recess for about ten minutes, and then we'll take up PowerX.
judges: Cowen , Hawkins, N. R. Smith